Jack R. **HUGHES** and Merle A. Pettit, Plaintiffs,

v.

**GENERAL MOTORS CORPORATION, a Delaware corporation, Defendant.**

No. L89–10077 CA.

United States District Court, W.D. Michigan, S.D.

Nov. 28, 1990.

On Motion to Reconsider May 18, 1991.

Paul L. Nelson, Tolley, Fisher & Verwys, P.C., Grand Rapids, Mich., for plaintiffs.

William R. Schulz, Foster, Swift, Collins & Smith, P.C., Lansing, Mich., for defendant.

## OPINION

HILLMAN, Senior District Judge.

This case concerns the "important, confusing and depressing subject of [ERISA] preemption." *Springer v. Wal–Mart Associates' Group Health Plan*, 714 F.Supp. 1168, 1170 (N.D.Ala.1989). In a sad commentary on what a perplexing thicket ERISA has created, it has been over ten years since plaintiffs were allegedly wronged and a court has yet to consider the merit of plaintiffs' claims.

Presently before the court is plaintiffs Hughes and Pettit's motion to remand this action to the Ingham County Circuit Court. Defendant General Motors opposes this motion, asserting that plaintiffs' state-law claims actually arise under the Employee Retirement Income Security Act (ERISA) and are therefore properly before this court. Plaintiffs contend that the state-law claims do not arise under ERISA and the matter should properly be dealt with in state court.

Plaintiffs' motion to remand was referred to United States Magistrate Joseph Scoville for report and recommendation by order dated September 28, 1989. In addition to conducting a hearing, Magistrate Scoville reviewed the parties' briefs, supplemental briefs, and letter memoranda. Magistrate Scoville issued a Report and Recommendation on July 31, 1990 in which he recommended that the motion to remand be denied, that plaintiffs' claim for breach of fiduciary duty be dismissed for failure to state a claim, and that plaintiffs be granted leave to amend their claim for breach of fiduciary duty. Plaintiffs filed an objection to Magistrate Scoville's report and recommendation, to which defendant replied. I have reviewed the record *de novo* and for the reasons that follow, I substantially agree with plaintiffs. The case will be remanded to state court.

### Facts

Plaintiffs were salaried employees of General Motors' Oldsmobile division. As such, they were covered by the General Motors Retirement Program for Salaried Employees (the "Plan"). In early 1980, both plaintiffs were considering retiring. Plaintiffs allege that, before deciding to retire, they made specific inquiry concerning the possibility that Oldsmobile would offer special early retirement benefits at some future time. Apparently, such special benefits had been offered at other GM divisions. Robert Shong, coordinator of Oldsmobile employee benefits, told plaintiff Pettit that Oldsmobile was not contemplating adopting a program to increase early retirement benefits. Relying upon this advice, Pettit gave written notice that he would retire effective May 1, 1980. Plaintiff Hughes also gave written notice of his intent to retire effective May 1, 1980.

As May 1, 1980 approached, both plaintiffs continued to inquire about possible adoption by Oldsmobile of special early retirement benefits, and they indicated their willingness to work any additional time necessary to qualify. Pettit's final inquiry was made on April 15, and Hughes last inquired on April 30. Both plaintiffs retired on May 1, 1980, unaware of any special early retirement program. Both began

receiving regular retirement benefits from the Plan.

On April 22, Oldsmobile's general manager authorized special early retirement benefits for employees who would attain the age of fifty-eight or fifty-nine by August 1, 1980. Even though the decision would not have applied to Hughes and Pettit, who were then fifty-six years of age, they argue that knowledge of the existence of the decision would have alerted them to consider postponing retirement and awaiting further developments.

In May, 1980, in an effort to reduce its salaried workforce, Oldsmobile offered special early retirement benefits to employees who would attain the age of fifty-five, fifty-six, or fifty-seven by August 1, 1980. The special benefits would have provided higher monthly payments to both Hughes and Pettit and would have eliminated the requirement that retirement benefits be reduced by outside income. Hughes and Pettit allege that Shong and other personnel department employees knew, no later than April 28, 1980, that Oldsmobile had decided to extend these special benefits to persons in their age bracket.

Pettit requested that he be allowed the additional benefits under the special early retirement date of May 1, 1980, because of Shong's misadvice. James Lewandowski, Oldsmobile's personnel director, wrote to Hughes and Pettit, stating that the company made its decision to offer special early retirement to their age group after May 1, 1980, and since Hughes and Pettit were no longer active employees, neither was entitled to those benefits.

### Procedural History

Plaintiffs first brought suit in this court in October 1984, alleging various violations of the Employee Retirement Income Security Act of 1974 (ERISA). *Hughes v. General Motors Corp.*, Case No. G84–1169. The complaint, as amended, set forth three ERISA claims. As ultimately described by the Sixth Circuit Court of Appeals, plaintiffs' claims were that:

1) By failing to disclose information, defendant deprived them of rights and benefits to which they would have been entitled under the special early retirement program, 29 U.S.C. § 1132(a)(1)(B);

2) Defendant violated fiduciary duties by failing to disclose information and by intentionally or negligently misrepresenting GM's intention to implement special early retirement programs, 29 U.S.C. § 1104; and

3) Defendant interfered with their eligibility to receive early retirement benefits, 29 U.S.C. § 1140.

In an opinion and order dated March 24, 1987, this court granted defendant's motion for summary judgment, finding that plaintiffs lacked standing to sue under ERISA. The court analyzed the special early retirement program as a separate ERISA plan, under which plaintiffs never accrued any vested rights. On this basis, the court determined that plaintiffs were not "participants" in the special early retirement program, as that term is defined in ERISA, 29 U.S.C. § 1002(7). Slip op. at 6–13.

On appeal, the Sixth Circuit affirmed the dismissal, but on different grounds from those relied upon by this court. *Hughes v. General Motors Corp.*, No. 87–1506, slip op. (6th Cir. July 14, 1988) [852 F.2d 568 (table)] ("*Hughes I*"). First, the Court of Appeals determined that plaintiffs were indeed "participants" in the Plan. Plaintiffs were "former employees who are receiving benefits from the GM plan." Slip op. at 4. They therefore fit within the statutory definition of participant as a "former employee" who "is or may become eligible to receive a benefit of any type." 29 U.S.C. § 1002(7).

Having determined that plaintiffs were "participants" in the Plan, the Sixth Circuit raised, *sua sponte*, the issue of subject-matter jurisdiction. The Court of Appeals analyzed each of the three claims asserted by plaintiffs and found no colorable basis for an ERISA claim under the jurisdictional statutes cited by plaintiffs, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. Specifically, the court found that plaintiffs had asserted no claim for damages for breach of an ERISA fiduciary duty, because neither ERISA nor the GM Plan obligated

plan fiduciaries to advise participants of contemplated, future plan amendments. *Hughes I,* slip op. at 10–11. Similarly, plaintiffs had not alleged any claim for benefits under the terms of the Plan, because they were already receiving everything that the Plan allowed for participants who retired when plaintiffs did. Slip op. at 8–9. Finally, the court determined that plaintiffs had not alleged a claim of discrimination under 29 U.S.C. § 1140. Slip op. at 11–12. For all of the above reasons, the Sixth Circuit affirmed this court's dismissal.

In *Hughes I,* the Sixth Circuit made several references to state law. First, the court noted that it was "conceivable that plaintiffs in the case at bar may have meritorious claims arising under state law...." Slip op. at 4. Second, *Hughes I* held, as noted above, that neither ERISA nor the GM Plan imposes upon plan fiduciaries a duty not to deceive participants about contemplated, future plan amendments. The court continued: "If the fiduciary had a duty not to deceive plaintiffs as to what was being contemplated in the way of future amendments to the terms of the plan, the duty arose under the common law of the State of Michigan." Slip op. at 11.

Third, at the end of the *Hughes I* opinion, the court analogized plaintiffs' claim to one for breach of an automobile warranty:

> The point of the foregoing discussion is that, although plaintiffs, as former employees who are receiving benefits under the GM plan are undoubtedly "participants" in the plan, that fact alone does not give the federal courts jurisdiction to adjudicate claims that arise neither under the terms of the plan nor under the terms of the statute. If a plan participant had purchased an Oldsmobile car that proved to have defective transmission, for example, the participant might have had a claim against GM for breach of warranty—but such a claim could not be adjudicated in the federal courts absent a statute giving the federal courts jurisdiction to entertain warranty claims.

Slip op. at 13.

The Supreme Court subsequently denied plaintiff's petition for certiorari. 489 U.S. 1081, 109 S.Ct. 1535, 103 L.Ed.2d 839 (1989).

Plaintiffs filed this action in the Ingham County Circuit Court within days of the *Hughes I* decision. In their complaint, plaintiffs assert three claims arising under state common law. These claims are summarized below.

### Common-law fraud

Count I alleges that Mr. Shong's statements that no special early retirement benefits were being considered were material, false, made with reckless disregard of their falsity, and were relied upon to plaintiffs' detriment. ¶¶ 37–40.

### Innocent misrepresentation

Count II sets for a state-law claim for innocent misrepresentation. Count II makes the additional allegations that plaintiffs' losses inured to the benefit of GM and that plaintiffs were actually deceived. ¶¶ 46–47.

### Breach of fiduciary duty

Count III asserts a claim for breach of fiduciary duty. Count III alleges that, as fiduciaries, GM and Mr. Shong owed certain duties of skill and care to plaintiffs. ¶¶ 51–52. In addition, Count III alleges that the failure to inform plaintiffs of the contemplated plan amendment violated defendant's fiduciary duties.

By notice of removal filed on August 10, 1989, defendant removed the action from the state circuit court to this court. In support of removal, defendant asserted that plaintiffs' claims were preempted by ERISA and that plaintiffs' sole cause of action, if they have any, arises under the provisions of ERISA. On August 24, 1989, plaintiffs moved to remand, asserting that this court lacks subject-matter jurisdiction over the claims asserted in the complaint. After reviewing the extensive briefs of the parties and the relevant case law, I conclude that plaintiffs' state law claims of fraud and innocent misrepresentation are not preempted by ERISA while ERISA does preempt plaintiffs' claim for breach of fiduciary duty.

## DISCUSSION

■ ERISA was meant to create a uniquely federal framework for dealing with employee pension and benefit plans. *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). ERISA imposes a variety of substantive requirements relating to participation, funding and vesting upon pension benefit plans. *Id.* at 525, 101 S.Ct. at 1907. While providing a comprehensive framework governing the administration of private employees pension and benefit plans, *Id.*, ERISA also establishes various uniform procedural standards concerning reporting, disclosure and fiduciary responsibility for both pension and benefit plans. 29 U.S.C. § 1021 *et seq.* ERISA does not, however, regulate the substantive content of these plans. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985).

To bolster the federal regulation of ERISA plans, Congress provided a broad exemption clause which states:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and non-exempt under section 1003(b) of this title.

Section 514 of ERISA, 29 U.S.C. § 1144(a).

In order to find preemption, therefore, a court must find that a state law cause of action "relates to" an ERISA plan. The Supreme Court has stated that a law would "relate to" an employee benefit plan in circumstances where the state law "has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983).

After considering the aforementioned ERISA preemption and Supreme Court language, the Sixth Circuit Court of Appeals has held that unless Congress has provided a remedy for a plaintiff's claims, the state law alleged to be violated does not sufficiently relate to an ERISA plan. *Perry v. P*I*E Nationwide, Inc.*, 872 F.2d 157 (6th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990). In *Perry*, the plaintiffs alleged that they were fraudulently induced to join an ERISA plan. Specifically, the plaintiffs claimed that the defendant, their employer, had misrepresented that the company would not be sold, thereby inducing them to participate in the ERISA stock option plan. By joining the plan, the plaintiffs had to take an irrevocable wage reduction. Claiming breach of fiduciary duty, state-law fraud, misrepresentation, coercion, and promissory estoppel, the plaintiffs sought rescission of the plan and restitution of the amount their wages were reduced because they joined the plan. The magistrate recommended that defendant's motion to dismiss be denied and the district court agreed. 872 F.2d at 157. Defendant appealed to the Sixth Circuit.

The Sixth Circuit began by recognizing the "broad construction" Congress has given ERISA with respect to its preemptive effect on state law and state actions that "relate to" an employment benefit plan. (citations omitted). 872 F.2d at 160. The Sixth Circuit termed the question before it, "Whether plaintiffs' cause of action for what amounts to a fraudulent procurement of their consent to participate in the [ERISA plan] is sufficiently *related* to the plan itself, or whether the relation, if any, is 'too tenuous, remote, or peripheral a matter to warrant a finding that the [action] "relates to" the plan.'" *Perry*, 872 F.2d at 160 (emphasis in original) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)).

■ As for plaintiffs' claim of breach of fiduciary duty, *Perry* held that this claim was "clearly foreclosed by ERISA." 872 F.2d at 161. "Preemption applies to this particular claim because ERISA provides a specific remedy for breach of fiduciary duty with respect to establishment of an ERISA plan." *See* 29 U.S.C. §§ 1104, 1132(a). In the present case, plaintiffs' claim for breach of fiduciary duty, Count III, must therefore be dismissed.

However, plaintiffs' state law claims for fraud and misrepresentation are, as in *Perry*, "the more difficult claims." 872 F.2d at 161. After reviewing numerous ERISA preemption opinions from other jurisdictions, the Sixth Circuit held:

> [P]reemption should apply to a state law claim only if Congress has provided a remedy for the wrong or wrongs asserted.

872 F.2d at 162. The *Perry* court found that since ERISA itself provided no remedy for plaintiffs' claims, ERISA did not preempt plaintiffs' fraud, misrepresentation, or promissory estoppel claims. *Id.*

In dealing with the state law claims, *Perry* analyzed ERISA preemption cases from other jurisdictions. Magistrate Scoville asserted in his report and recommendation that the opinions *Perry* cites are pre-plan cases—that is, the alleged wrong in those cases occurred before the ERISA plan was established and plaintiffs were participants in the plan. *See* Report and Recommendation at 24–27.

However, this court finds that some of the cases *Perry* cited were indeed cases in which an ERISA plan was in effect when the alleged wrong occurred. For example, in *Provience v. Valley Clerks Trust Fund*, 509 F.Supp. 388 (E.D.Cal.1981), cited by *Perry* at 161, the plaintiff, a participant in an employee trust fund, sued the plan's officers and agents under state law causes of action. In *Provience*, an ERISA plan was clearly in effect when the alleged wrong occurred.

Another opinion relied upon by *Perry* was *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 (8th Cir.1981), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). Falstaff had purchased an insurance plan for plaintiff which the Eighth Circuit found was an ERISA plan. 653 F.2d at 1214. Although *Perry* did not discuss the existence or absence of an ERISA plan in *Dependahl*, *Perry* did assert that it was disposed toward *Dependahl*'s reasoning for its holding that state law would be preempted only if Congress has provided a remedy for the alleged wrong. Further-

more, nowhere in *Perry* does the Sixth Circuit limit its holding to pre-plan cases.

With *Perry* as binding authority, this court finds that plaintiffs' claims for state law fraud and innocent misrepresentation are not preempted by ERISA. In this case, the Sixth Circuit has already held that ERISA did not provide a remedy for plaintiffs' alleged wrongs. *See Hughes I*, slip op. at 8–13. When *Hughes I* is combined with *Perry*, I find there is no ERISA preemption.

In summary, the court holds that plaintiffs' breach of fiduciary duty claim is dismissed pursuant to *Perry*. The court concludes that ERISA does not preempt plaintiffs' state law claims for fraud and misrepresentation. Therefore, this case will be remanded to state court.

## ON MOTION TO RECONSIDER

On November 28, 1990, this court issued an opinion and order remanding back to state court plaintiffs' claims for common law fraud and innocent misrepresentation. On November 29, 1990, a certified copy of the order was mailed by the clerk of this court to the clerk of the Ingham County Circuit Court. Docket No. 21. On December 7, 1990, defendant moved for reconsideration of the court's opinion and order based upon the United States Supreme Court's opinion in *Ingersoll–Rand Co. v. McClendon*, ——— U.S. ———, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). On December 11, 1990, defendant amended its motion for reconsideration to bring the motion pursuant to Fed.R.Civ.P. 59(e). For the reasons that follow, this court is precluded from reconsidering its November 28, 1990 order. The case is remanded to state court.

Fed.R.Civ.P. 59(e) states, "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." While defendant's motion to alter the judgment was timely filed, the court must adhere to 28 U.S.C. § 1447(c) and (d), which provides:

> (c) ... If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the case shall be remanded ... A

certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

(d) An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise....

In *Browning v. Navarro*, 743 F.2d 1069 (5th Cir.1984), the court addressed whether a remand order under 28 U.S.C. § 1478, which contains language paralleling that of § 1447(d), is reviewable, even indirectly, by an appellate court. Due to the scarcity of legislative history and existing jurisprudence interpreting § 1478(b), *Browning* thoroughly analyzed the jurisprudence interpreting § 1447(d):

It is axiomatic that remanding a case to state court terminates the jurisdiction of a federal bankruptcy or district court over that case. *United States v. Rice*, 327 U.S. 742, 66 S.Ct. 835, 90 L.Ed. 982 (1946) (applying 28 U.S.C. § 71); *Robertson v. Ball*, 534 F.2d 63, 66 n. 5 (5th Cir.1976) ("[O]nce the federal district court considers the proper factors and decides to remand, the action should go forward in the state court without the further delay of appeal, and without regard to whether the federal district court was correct or incorrect."); 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3739 (1976 & Supp.1983); *cf. E.D. Systems Corp. v. Southwestern Bell Telephone Co.*, 674 F.2d 453 (5th Cir.1982) (federal court lost jurisdiction as to claims it remanded to state court, but retained jurisdiction over proceedings excepted from the remand order). Even a federal court, persuaded that it has issued an erroneous remand order, cannot vacate the order once entered. *In re La Providencia Development Corp.*, 406 F.2d 251 (1st Cir.1969). The federal court is completely divested of jurisdiction once it mails a certified copy of the order to the clerk of the state court. *See* 28 U.S.C. § 1447(c); 1A J. Moore & B. Ringle, Moore's Federal Practice ¶ 0.169[2–1], at 697 (2d ed. 1983); 14 C. Wright, A. Miller & E. Cooper, *supra*, § 3739, at 764–65; *see also Bucy*

*v. Nevada Construction Co.*, 125 F.2d 213 (9th Cir.1942) (district court could review and set aside its own erroneous remand order before filing of certified copy of order in state court because remand order is not self-executing); Bankruptcy Rule 9027(e). "[O]nce a district court has decided to remand a case and has so notified the state court, the district judge is without power to take any further action." *Federal Deposit Insurance Corp. v. Santiago Plaza*, 598 F.2d 634, 636 (1st Cir.1979).

*Browning*, 743 F.2d at 1078–79.

In *Boone Coal and Timber Co. v. Polan*, 787 F.2d 1056 (6th Cir.1986), the Sixth Circuit quoted verbatim the above passage from *Browning*. 787 F.2d at 1060–61. In addition, the Sixth Circuit recited the following footnote from *Browning:*

26. The First Circuit, although writing in the context of a diversity case, made the following germane comments:

Removal ... to the prejudice of state court jurisdiction, is a privilege to be strictly construed, ... and the state court proceedings are to be interfered with once, at most. This is not only in the interest of judicial economy, but out of respect for the state court and in recognition of principles of comity. *The action must not ricochet back and forth depending upon the most recent determination of a federal court.* ... [T]here is no more reason for a district court being able to review its own decision, and revoke the remand, than for an appellate court requiring it to do so. Both are foreclosed; nothing could be more inclusive than the phrase "on appeal or otherwise." The district court has *one shot, right or wrong.*

*In re La Providencia Development, supra*, at 252–53 (emphasis added).

743 F.2d at 1078 n. 26. According to the Sixth Circuit, "[t]he reasoning and authority provided by the Fifth Circuit [in *Browning*] are persuasive." *Id.* at 1061.

In following *Browning*'s reasoning, the Sixth Circuit is also following a clear trend

established by other courts—once the district court makes its decision to remand, that determination cannot be reconsidered. Section 1447(d) clearly states that a remand order is "not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d). "This language has been universally construed to preclude not only appellate review but also reconsideration by the district court. Once a district court certifies a remand order to state court it is divested of jurisdiction and can take no further action on the case." *Seedman v. U.S. District Court for the Central District of California*, 837 F.2d 413, 414 (9th Cir.1988) (per curiam) (citing *New Orleans Pub. Serv., Inc. v. Majoue*, 802 F.2d 166, 167 (5th Cir.1986) (per curiam); *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 279 n. 3 (9th Cir.1984); *Three J Farms, Inc. v. Alton Box Board Co.*, 609 F.2d 112, 115 (4th Cir.1979), *cert. denied*, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980) (Section 1447(d) "unquestionably" bars district court reconsideration of remand order); *Federal Deposit Insurance Corp. v. Santiago Plaza*, 598 F.2d 634, 636 (1st Cir.1979) (per curiam); 14A C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 3739, at 589 (1985)).

In accordance with 28 U.S.C. § 1447(c), a certified copy of the court's November 28, 1990 remand order was sent to the state circuit court. That action ended this court's jurisdiction over this lawsuit. Following the plain language of 28 U.S.C. § 1447(d), this court may not review that remand order. Therefore, defendant's motion for reconsideration is denied.