James **CRUMB**

v.

**BEVERLY ENTERPRISES, INC.** and Confed. Admin. Services, Inc.

**BEVERLY ENTERPRISES, INC.,** and Beverly Enterprises' Employee Group Health Plan

v.

James **CRUMB,** Ray **Goldstein,** and Goldberg, Goldstein & Buckley, P.A.

No. 92–346–CIV–FTM–99(D).

United States District Court, M.D. Florida, Fort Myers Division.

Nov. 26, 1993.

Mark Smith, Goldberg, Goldstein & Buckley, P.A., Ft. Myers, FL, for plaintiff.

Edward Lee Isler, Gibson, Dunn & Crutcher, Washington, DC, David I. Schiller, Gibson, Dunn & Crutcher, Dallas, TX, for defendants.

### MEMORANDUM

MORTON, Senior District Judge, Sitting by Assignment.

James Crumb, a participant and beneficiary of the ERISA plan called Beverly Enterprises, Inc., (Beverly), a group health plan, brought the original suit. The Plan counterclaimed against James Crumb, Ray Goldstein, and Goldberg, Goldstein & Buckley, P.A., for the proceeds of a settlement. Both sides have filed motions for summary judgment.

■ Beverly established and maintained a health coverage plan exclusively for the eligible employees of Beverly and their dependents. The Plan has more than 18,000 participants and has provided more than $174 million in health benefits. It is self funded through a combination of employee payroll deduction and employer contributions. No insurance policy covers any portion of the benefits paid under the Plan. It has at all times been maintained in compliance with ERISA. As the ERISA plan administrator and named plan fiduciary, Beverly is required to administer the Plan according to its express terms. At all times relevant here, Crumb was a Plan participant. As required by ERISA, Crumb and all the other plan participants were provided a summary plan description which explained, among other things, the Plan's claim procedure and the participant's right to receive and inspect a copy of the Plan.

In June 1991, Donald Swan struck Crumb with his car and Crumb incurred medical expenses. Section 5.04 of the Plan states that it will pay covered medical expenses incurred as a result of the wrongful act of a third party "only in consideration of a signed and legally enforceable agreement" from the participant "to reimburse the plan for any award, settlement, judgment, or other payment resulting from such wrongful act." The Summary Plan description contains similar language explaining the requirement of Section 5.04.

In accordance with these terms and before the Plan had paid any benefits to Crumb, Beverly's third party administrator presented Crumb with a reimbursement agreement for his signature. The document which Crumb signed reads in pertinent part:

> "I agree that if Confed. Admin. Svcs., Inc. (as Plan administrator for Beverly Enterprises, Inc.), advances benefits to me or on my behalf for this injury or illness, I will pay Confed. Admin. Svcs., Inc., in full any sums advanced to cover such expenses from the judgment or settlement I or my dependents receive."

On or about October 1991, Crumb submitted a series of bills which CASI refused to pay in full. After deducting Crumb's copayment and excluding charges that were not covered, CASI, in reliance on Crumb's written agreement to reimburse the Plan, paid $16,068.80 in Plan benefits to or on behalf of Crumb. CASI provided a detailed explanation of the reasons for denying some of the charges and informed Crumb that he could appeal the benefit determination by submitting a written request for review within 60 days. Crumb never appealed.

Subsequently, Crumb received a $25,000 settlement from the tortfeasor's insurance, State Farm Insurance Company. In November 1991, Crumb's attorneys and counterclaim defendants, Goldberg, Goldstein and Buckley unilaterally distributed the $25,000 as follows:

| | |
|---|---|
| (a) Attorney fees | $ 8,333.33 |
| (b) Costs | 2,561.11 |
| (c) Unpaid Medical Bills | 3,319.12 |
| (d) Crumb | 2,379.44 |
| (e) Held in law firm's trust account pending outcome of the present dispute | 10,712.00 |

In seeking to enforce the terms of the Plan, CASI offered to accept $10,766.10 in satisfaction of Crumb's reimbursement obligation of $16,068.80. Through his attorneys, Crumb rejected CASI'S settlement offer and

counteroffered only $3312.76. CASI refused Crumb's counteroffer and informed Crumb's law firm that the Plan was a self-funded ERISA plan and was entitled under ERISA to complete reimbursement of all amounts advanced on behalf of Crumb.

The $16,068.80 remains unreimbursed. In March 1993, Crumb submitted several additional medical bills for treatment arising out of his accident. All of these bills were for medical services provided to Crumb on or about June 1991. CASI denied these claims because the Plan requires that claims be submitted within 12 months of the date on which the services were rendered and because they either had been paid or were for services not covered by the Plan. CASI informed Crumb of this denial in statements dated April 6, 1993.

Essentially, the Plan consists of (1) coverage, (2) payment, and (3) reimbursement according to Plan. All of these parts of the Plan are governed by federal law under ERISA, and any Florida laws which would otherwise apply are completely preempted. Federal law under ERISA allows the policy administrator some discretion in carrying out the payment provisions of the contract. This is balanced by an appeal process. Since Crumb did not appeal, he has failed to exhaust his administrative remedies.

The court finds that Crumb used this lawsuit as a legal ploy and as an attempt to accomplish by indirection what he could not accomplish by applying the provisions of the Plan. This lawsuit was completely unnecessary because the parties' obligations are clear and enforceable under Federal law; the original claim was filed in bad faith. Furthermore, Crumb now tries to limit recovery to CASI's settlement offer—further indicating that he used this suit as a ploy.

This court determines that the provisions of the policy are clear, that the counterclaimants are entitled to full reimbursement for their medical expenses in accordance with the provisions of the contract, and that they are entitled to recover the sum of $16,068.80 from Crumb. In light of the holding in *Chapman v. Klemick*, 3 F.3d 1508 (11th Cir. 1993), the counterclaims against all other counterclaim-defendants will be dismissed.

Due to this holding, it is not necessary to address the other claims, but the court would note that if it were necessary it would hold that the defendant's unjust enrichment theory is fully justified in this case, because of the plaintiff's effort to obtain a windfall through an unusual interpretation of the policy.

■ In view of the fact this court has held that the filing of the original suit was a legal ploy, no attorney fees will be granted. A judgment will be entered in the amount of $16,068.80 against Crumb. An appropriate order will be entered.

## ORDER

In accordance with the memorandum contemporaneously filed, the plaintiff's motion for summary judgment is denied. The defendant's motion for summary judgment is granted as to counterclaim-defendant Crumb in the amount of $16,068.80. The counterclaims against the other counterclaim-defendants are hereby dismissed.