# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

HARRY J. WOOD, JR. and )
CATHERINE D. WOOD, as next )
of kin as Administrators of the )
Estate of Marc James Wood, )
deceased, and Individually, )
)
    Plaintiffs/Appellees, )
)
)
VS. )    Davidson Circuit
)    No. 92C-2112
)
MARCUS M. PROSSER, )    Appeal No.
)    01A01-9510-CV-00468
    Defendant, )
)
McDONOUGH CAPERTON )
INSURANCE ADMINISTRATORS, )
)
    Intervenor/Appellant. )

**FILED**

**June 11, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

## APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY
## AT NASHVILLE, TENNESSEE

### THE HONORABLE MARIETTA M. SHIPLEY, JUDGE

For the Plaintiffs/Appellees:

Daniel B. Eisenstein
Nashville, Tennessee

For the Intervenor/Appellant:

John D. Schwalb
Brewer, Krause, Brooks & Mills
Nashville, Tennessee

## REVERSED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves the right of an employee benefit plan to be reimbursed for its payment of the medical expenses of one of its members who was killed in an automobile collision. The parents of the deceased employee filed a wrongful death action in the Circuit Court for Davidson County against the driver of the other vehicle involved in the collision. The plan intervened in the parents' action seeking to recover the medical payments it had made on their son's behalf. After the parents settled the wrongful death claim, the trial court held that the plan was not entitled to be reimbursed from the settlement proceeds. The plan appealed. We have determined that the trial court erred and that the plan has a contractual right to be reimbursed from the proceeds of the settlement of the wrongful death action.

## I.

Marc James Wood was seriously injured on May 12, 1992 when the car he was driving collided head-on with a truck being driven by Marcus Prosser. Mr. Wood was rushed to the emergency room at Williamson County Medical Center where he died later that day. The charges for Mr. Wood's care in the emergency room amounted to $11,546.50.

Mr. Wood was covered by two insurance policies when the collision occurred. The first was a Principal Financial Group policy purchased by his parents in 1984 when he graduated from college. The second was a group plan provided by his employer, Food Lion, Inc., where he had worked since 1991. Principal Financial Group initially paid for Mr. Wood's medical treatment. When Food Lion's group plan later paid for the same treatment, the Williamson County Medical Center refunded Principal Financial Group's payments.

In August 1992, Mr. Wood's parents filed a wrongful death action in the Circuit Court for Davidson County against Mr. Prosser. The trial court later permitted McDonough Caperton Insurance Administrators ("McDonough

Caperton"), the administrator of Food Lion's group plan, to intervene in the wrongful death suit in order to recover the $11,546.50 it paid on Mr Wood's behalf. Mr. Wood's parents settled their wrongful death action against Mr. Prosser for $45,000, and in August 1993, the trial court directed that $11,546.50 of the settlement proceeds be held by the circuit court clerk pending the resolution of McDonough Caperton's asserted "medical lien."[1]

Both McDonough Caperton and Mr. Wood's parents filed summary judgment motions. McDonough Caperton claimed that Food Lion's group plan had a contractual right to reimbursement for the medical payments made on Mr. Wood's behalf. Mr. Wood's parents asserted that McDonough Caperton was not entitled to the settlement proceeds and that it should seek reimbursement from the Principal Financial Group. In an order entered on December 30, 1994, the trial court found that McDonough Caperton was not entitled to the $11,546.50 being held by the trial court clerk and directed McDonough Caperton to bring suit against any other party "who McDonough . . . believes may owe it for the funds it paid to Williamson Medical Center for treatment of Marc James Wood." McDonough Caperton took no action against any other party, and on August 15, 1995, the trial court dismissed its intervening complaint and directed the clerk to disburse the $11,546.50 plus accrued interest to Mr. Wood's parents. This appeal followed.

## II.

The facts of this case are undisputed. Accordingly, the question presented by McDonough Caperton is one of law. We must determine whether a self-funded employee benefit plan may seek reimbursement from an employee's estate for its payment of the employee's medical expenses when it was not required to make these payments. We have determined that Food Lion's group plan is entitled to a portion of the settlement proceeds because of a provision in the plan permitting

---

[1]The trial court approved disbursing the remaining settlement proceeds as follows: $7,268.10 to Mr. Wood's parents to reimburse them for the expenses of Mr. Wood's funeral; $11,151.16 to the lawyer representing Mr. Wood's parents, and $15,034.24 to be held by the trial court clerk for Mr. Wood's son.

the plan to recover medical benefits paid as a result of injuries occurring through the act or omission of another person.

## A.

Food Lion's group plan is a fully self-funded employee benefit plan governed by the Employee Retirement Security Act.[2] ERISA federalizes the law dealing with covered self-funded employee benefit plans and expressly preempts "any and all State laws insofar as they may now or hereafter relate to any [covered] employee benefit plan." 29 U.S.C.A. § 1144(a) (1985). This preemption provision is "clearly expansive," *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, ___, 115 S. Ct. 1671, 1677 (1995), and "broadly worded." *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S. Ct. 478, 482 (1990).

In order to determine whether a particular state law "relates to" an employee benefit plan, the courts must determine whether the law has a connection with or refers to the plan itself. *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A. Inc.,* ___ U.S. ___, ___, 117 S. Ct. 832, 837 (1997); *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 129, 113 S. Ct. 580, 583 (1992). A cause of action premised on the existence of a covered plan or directing the court's attention to a covered plan "relates to" the plan for preemption purposes. *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* ___ U.S. at ___, 117 S. Ct. at 837-38; *Ingersoll-Rand Co. v. McClendon,* 498 U.S. at 140, 111 S. Ct. at 483. Causes of action involving subrogation or reimbursement rights under a covered employee benefit plan are premised on the plan itself and, therefore, are governed by federal common law rather than state law. *FMC Corp. v. Holliday,* 498 U.S. 52, 58-61, 111 S. Ct. 403, 407-09 (1990); *Dugan v. Nickla,* 763 F. Supp. 981, 983 (N.D. Ill. 1991); *Blue Cross / Blue Shield v. Flam,* 509 N.W.2d 393, 398 (Minn. Ct. App. 1993).

_____

[2]The Employment Retirement Security Act ("ERISA") is codified at 29 U.S.C.A. §§ 1001 through 1461 (1985 & Supp. 1997).

The basic federal common-law principles required to resolve this dispute are straightforward and are not dissimilar to familiar principles of contract construction. An employee benefit plan is essentially a contract. *Kemmerer v. ICI Americas, Inc.,* 70 F.3d 281, 287 (3d Cir. 1995); *Conley v. Pitney Bowes,* 34 F.3d 714, 717 (8th Cir. 1994); *Williams v. Cordis Corp.,* 30 F.3d 1429, 1432 (11th Cir. 1994); *Land v. Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Health and Welfare Fund,* 25 F.3d 509, 514 (7th Cir. 1994). Thus, adjudicating rights of subrogation or reimbursement arising under a covered employee benefit plan requires the application of the federal common-law rules of contract construction. *Central States, Southeast and Southwest Areas Pension Fund v. Kroger Co.,* 73 F.3d 727, 731 (7th Cir. 1996).

The federal contract construction rules require the courts to first look to the language of the employee benefit plan, *Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1293 (6th Cir. 1991), and to interpret this language in its popular and ordinary sense just as a person of average intelligence and experience would. *Cash v. Wal-Mart Group Health Plan,* 107 F.3d 637, 643 (8th Cir. 1997); *McClure v. Life Ins. Co. of N. Am.,* 84 F.3d 1129, 1134 (9th Cir. 1996); *Brewer v. Protexall, Inc.,* 50 F.3d 453, 457 (7th Cir. 1995). Unambiguous plan language is controlling, *Meadows v. Cagle's, Inc.,* 954 F.2d 686, 691 (11th Cir. 1992), and must be enforced as written. *Ryan v. Federal Express Corp.,* 78 F.3d 123, 128 (3d Cir. 1996); *Bellino v. Schlumberger Techs., Inc.,* 944 F.2d 26, 29-30 (1st Cir. 1991); *Danowski v. United States,* 924 F. Supp. 661, 672 (D.N.J. 1996). The courts should not invoke the common-law rules of construction to "overturn carefully crafted plan provisions." *Singer v. Black & Decker Corp.,* 964 F.2d 1449, 1454 (4th Cir. 1992) (Wilkinson, J., concurring). They should likewise decline to torture the plan language to reach a particular result that the contracting parties never intended or imagined, *Ryan v. Federal Express Corp.,* 78 F.3d at 126, or to ignore the plan language in order to provide coverage for which no premium has been paid. *Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 57-58 (4th Cir. 1992).

The language of an employee benefit plan is ambiguous only if it is subject to reasonable alternative interpretations. *Wahlin v. Sears, Roebuck & Co.,* 78 F.3d

1232, 1235 (7th Cir. 1996); *Wulf v. Quantum Chem. Corp.,* 26 F.3d 1368, 1376 (6th Cir. 1994). Ambiguities in an employee benefit plan must be construed against the drafter and in favor of the insured. *Barnes v. Independent Auto. Dealers Assoc. of Cal. Health & Welfare Benefit Plan,* 64 F.3d 1389, 1393 (9th Cal. 1995); *Lee v. Blue Cross/Blue Shield of Ala.,* 10 F.3d 1547, 1551 (11th Cir. 1994); *McMahan v. New England Mut. Life Ins. Co.,* 888 F.2d 426, 429 (6th Cir. 1989).

## B.

ERISA does not regulate the substantive content of employee benefit plans. *Hughes v. General Motors Corp.,* 764 F. Supp. 1231, 1235 (W.D. Mich. 1990). Thus, it neither requires nor bars subrogation or reimbursement clauses, and it does not otherwise regulate the content of these clauses. *Ryan v. Federal Express Corp.,* 78 F.3d at 127; *Land v. Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Health and Welfare Fund,* 25 F.3d at 514. Thus, reimbursement and subrogation clauses included in an employee benefit plan should be enforced according to their plain meaning. The right to reimbursement or subrogation thus depends on the terms of the employee benefit plan itself. *Serembus ex rel. UIU Health & Welfare Fund v. Mathwig,* 817 F. Supp. 1414, 1423 (E.D. Wis. 1992); *Blue Cross/ Blue Shield v. Flam,* 509 N.W.2d at 398.

Food Lion's group plan contains the following provision with regard to coverage for injuries occurring as a result of acts of third persons:

> Medical care benefits and disability payments are not payable to or for a person covered under this plan when the injury or illness to the covered person occurs through the act or omission of another person. However, the Employer may elect to advance payment for medical and disability expenses incurred for an injury or illness in which a third party may be liable. For this to happen, the covered person or guardian must sign an agreement to repay the Employer in full any sums advanced to cover such medical or disability expenses from the judgment or settlement received. This provision gives to the Employer the right to recover the medical or disability expenses advanced regardless of whether that person actually signs the

repayment agreement. It is only necessary that the injury occurred through the act of a third party and the Employer's right of recovery may be from the third party or any liability insurance covering the third party, or the covered person's own uninsured motorist benefits, underinsured motorist benefits or any no-fault benefits which are paid or payable.

Although McDonough calls this provision a "subrogation endorsement," it permits both subrogation[3] and reimbursement.[4]

Clauses such as the one at issue in this case should be given effect unless they violate public policy or are invalid for some other reason of general contract law. Mr. Wood's parents have not asserted that this clause is void as against public policy, and we perceive of no policy basis for invalidating it. Food Lion could appropriately exclude from its plan's coverage medical expenses stemming from injuries resulting from acts of third parties, and it could also condition making advance payments for non-covered medical expenses on the requirement that the employee reimburse the plan for these payments. Other courts have consistently upheld the validity of provisions such as these. *See e.g., Bollman Hat Co. v. Root,* 112 F.3d 113, 116 (3d Cir. 1997); *Unisys Med. Plan v. Timm.* 98 F.3d 971, 973 (7th Cir. 1996); *Wendy's Int'l, Inc. v. Karsko,* 94 F.3d 1010, 1013 (6th Cir. 1996) *Harris Trust & Sav. Bank v. Provident Life & Accident Ins. Co.,* 57 F.3d 608, 615-16 (7th Cir. 1995); *Blackburn v. Becker*, 933 F. Supp. 724, 729 (N.D. Ill. 1996); *Crumb v. Beverly Enters., Inc.,* 841 F. Supp. 389, 391 (M.D. Fla. 1993); *Singleton v. Board of Trustees of IBEW Local 613,* 830 F. Supp. 630, ___ (N.D. Ga. 1993).

Food Lion's group plan is unambiguous and does nothing substantially different from the other ERISA plans approved by the federal courts. It excludes from coverage injuries resulting from acts of third-parties, but it also accommodates its employees by allowing advanced medical payments for these

---

[3]In its most basic form, subrogation means that Party A is substituted for Party B and may assert the pre-substitution rights Party B had against Party C directly against Party C.

[4]Reimbursement, in its most basic form, permits Party A to recover from Party B payments to Party C that Party A made on Party B's behalf.

injuries. The plan permits Food Lion to obtain reimbursement directly from an employee who signs a repayment agreement, and, if the employee does not sign a repayment agreement, it permits Food Lion to seek recovery from any third party or its liability insurer or from the employee's own uninsured or underinsured motorist insurer.

McDonough Caperton's intervening complaint is consistent with the terms of Food Lion's group plan. It seeks to recover from Mr. Prosser and his liability insurance carrier. The plan has a clear right to assert this claim. To rule otherwise would be to vitiate the contractual agreement between the insurer and the insured.

## C.

Rather than confronting the contract issue directly, Mr. Wood's parents assert that this is, in essence, a coordination of benefits dispute.[5] We do not agree. The coordination of benefits clause in Food Lion's group plan applies only when "the covered person is covered under more than one plan" and is limited to medical expenses "for which the claimant is covered under one or more plans." Food Lion's group plan did not cover medical expenses stemming from injuries resulting from acts of by third parties and, therefore, Food Lion was never contractually bound to pay Mr. Wood's medical expenses. Accordingly, for the purposes of this dispute, Mr. Wood was not a person covered by more than one plan.

## III.

We reverse the summary judgment dismissing McDonough Caperton's intervening complaint and remand the case to the trial court with instructions to

---

[5]Mr. Wood's parents have not asserted the typical defenses to McDonough Caperton's claims for reimbursement. They have neither claimed nor proved that their settlement with Mr. Prosser did not include the medical expenses stemming from the accident or that the settlement did not fully compensate them or make them whole. They have likewise not attempted to argue or prove that they could not have pursued a claim for benefits under the Principal Financial Group plan.

grant McDonough Caperton's cross-motion for summary judgment and to enter an order directing the clerk of the court to pay over the $11,546.50 plus accrued interest now in the clerk's hands to McDonough Caperton, as the administrator of Food Lion's group plan. The costs of this appeal are taxed against the proceeds now in the hands of the trial court clerk.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
SAMUEL L. LEWIS, JUDGE


_____
BEN H. CANTRELL, JUDGE