**Joseph WILLIAMS, on behalf of himself and all others similarly situated, Plaintiff–Appellant,**

v.

**CORDIS CORPORATION, a Florida Corporation, Cordis Corporation Employee Retirement Plan, Cordis Corporation Administration Committee, Defendants–Appellees.**

No. 92–4475.

United States Court of Appeals, Eleventh Circuit.

Sept. 8, 1994.

Donald J. Jaret, Donald J. Jaret, P.A., Miami Beach, FL, David James Smith, Kauf-

man, Miller, Dickstein & Grunspan, Miami, FL, for appellant.

Mark E. Zelek, Terence G. Connor, Morgan Lewis & Bockius, Miami, FL, for appellees.

Before COX and CARNES, Circuit Judges, and WOOD *, Senior Circuit Judge.

PER CURIAM:

### I. Background

The plaintiff Joseph Williams is a former employee of the Cordis Corporation's Special Medical Equipment Manufacturing Plant, also known as the Implantables Division, which manufactured heart pacemakers. In early 1987, Cordis decided to stop making pacemakers and sold the Implantables Division to Telectronics Pacing Systems, Inc., also known as TPL–Cordis, Inc. ("TPL"), an unrelated entity. When the sale closed, Cordis eliminated Williams's job and terminated his employment. Williams returned to the same job at the same place, however, as a new TPL employee. *See generally Williams v. Cordis Corp.*, 16 Employee Benefits Cas. (BNA) 2424, 1993 WL 373940 (S.D.Fla.1993).

After the termination of his employment with Cordis, Williams filed a claim for a lump sum distribution of benefits under the Cordis Corporation Employee Retirement Plan (the "Retirement Plan"). Williams asked the Cordis Corporation Administration Committee (the "Committee") to exercise its discretion under the plan to make lump sum distributions to beneficiaries. The Committee denied his claim in February 1989, citing the need for plan stability and stating that he was not eligible to receive benefits until he reached the age of 55, the Retirement Plan's early retirement age.

Later that month, Williams submitted a formal appeal to the Committee, again basing his claim on the Committee's discretionary authority to make lump sum distributions under the plan. In a letter dated July 5, 1989, the Committee acknowledged its discretion to make the distribution requested by Williams, but affirmed its decision to deny the claim.

Williams then filed suit in the district court under 29 U.S.C. § 1132(e)(1) (1988) (current version at 29 U.S.C.A. § 1132(e)(1) (West Supp.1994)). Count I of Williams's amended complaint asserts that the Committee's exercise of discretion in denying his claim violates 26 C.F.R. § 1.411(d)–4 (1993), which prohibits employers or plan administrators from exercising discretion to deny or limit the availability of an optional form of benefit to a plan participant.[1] The magistrate judge concluded that the Retirement Plan and the law applicable at the time of the termination of Williams's employment in 1987 permitted the Committee to exercise discretion in denying Williams's request for a lump sum benefit distribution. Based upon the magistrate judge's report and recommendation, the district court dismissed Count I of the amended complaint. Williams now appeals the district court's dismissal of Count I.

### II. Issue on Appeal and Standard of Review

The question presented is whether the district court erred in dismissing Count I of Williams's amended complaint. Specifically, we must decide whether Williams could state a claim for a violation of 26 C.F.R. § 1.411(d)–4. For the purposes of this appeal, we accept all of the facts alleged by Williams's amended complaint as true, and subject the district court's order of dismissal to *de novo* review. *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir.1993).

### III. Discussion

#### A. From ERISA to 26 C.F.R. § 1.411(d)–4

Congress enacted the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub.L. No. 93–406, 88 Stat. 832

---

* Honorable Harlington Wood, Jr., Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. As the magistrate judge observed, "there is no allegation that the Committee abused its discretion under the terms of the ... Plan." (R. 4–74 at 2.)

(codified as amended at 29 U.S.C.A. §§ 1001–1461 (West 1985 & Supp.1994)), " 'to promote the interests of employees and their beneficiaries in employee benefit plans' and 'to protect contractually defined benefits.' " *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989) (quoting *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983) and *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985)). To further this purpose, Congress enacted the Retirement Equity Act of 1984 ("REA"), Pub.L. No. 98–397, 98 Stat. 1429. The REA amended section 204(g) of ERISA, 29 U.S.C. § 1054(g), to read in relevant part:

**(g) Decrease of accrued benefits through amendment of plan**

(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan....

(2) For purposes of paragraph (1), a plan amendment which has the effect of—

．　　　．　　　．　　　．

(B) Eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits....

29 U.S.C.A. § 1054(g) (West Supp.1994); *see also* I.R.C. § 411(d)(6) (West Supp.1994) (essentially identical tax code provision). This provision, known as the "anti-cutback" rule, was intended to prevent employers from "pulling the rug out from under" employees participating in a plan. The payment of benefits in a lump sum is one example of a 29 U.S.C. § 1054(g)(2)(B) "optional form of ben-

efits." *Counts v. Kissack Water & Oil Serv., Inc.,* 986 F.2d 1322, 1324 (10th Cir.1993).

Interpreting this change to 29 U.S.C. § 1054(g) and I.R.C. § 411(d)(6), the Treasury Department in 1986 proposed 26 C.F.R. § 1.411(d)–4 (1993).[2] As we noted earlier, this regulation, effective January 30, 1986, *see Aldridge v. Lily–Tulip, Inc. Salary Retirement Plan Benefits Comm.,* 953 F.2d 587, 592 n. 4 (11th Cir.1992), prohibited employers or plan administrators from exercising discretion to deny or limit the availability of an optional form of benefit to a plan participant.[3] The regulation provided for a transition period with respect to existing plans, however, so long as a plan chose one of the transition alternatives prior to July 1, 1989. Otherwise, the regulation's requirements took full effect on that date. *See* 26 C.F.R. § 1.411(d)–4, Q & A–9.

*B. The Cordis Retirement Plan and 26 C.F.R. § 1.411(d)–4*

▆ The Retirement Plan did not select one of the transition alternatives provided by 26 C.F.R. § 1.411(d)–4, and the regulation's requirements became effective for the plan on July 1, 1989. Williams argues that the Committee's action in denying his claim for a lump sum distribution did not become final until the Committee issued its letter dated July 5, 1989, four days after 26 C.F.R. § 1.411(d)–4 became effective with respect to the Retirement Plan.

Williams argues that despite the regulation's prohibition on the exercise of discretion in the denial of optional benefits, the Committee's letter explicitly states that the Committee was exercising its discretion in denying his claim for a lump sum distribution. Thus, Williams argues that the Committee's

---

**2.** Although issued by the Treasury Department under I.R.C. § 411, the regulation is equally applicable to 29 U.S.C. § 1054. *See Counts,* 986 F.2d at 1324 & n. 1; *see also* Reorganization Plan No. 4 of 1978, § 101, 43 Fed.Reg. 47713, 47713 (transferring authority to issue regulations under section 204 of ERISA, 29 U.S.C. § 1054, from Secretary of Labor to Secretary of the Treasury).

**3.** Except as provided in paragraph (d) of Q & A–2 of this section with respect to certain employee stock ownership plans, a plan that per-

mits the employer, either directly or indirectly, through the exercise of discretion, to deny a participant a section 411(d)(6) protected benefit provided under the plan for which the participant is otherwise eligible (but for the employer's exercise of discretion) violates the requirements of section 411(d)(6). A plan provision that makes a section 411(d)(6) protected benefit available only to those employees as the employer may designate is within the scope of this prohibition.

26 C.F.R. § 1.411(d)–4, Q & A–4(a).

denial violates 26 C.F.R. § 1.411(d)–4. Williams maintains that this is not a retroactive application of 26 C.F.R. § 1.411(d)–4 to his claim because the Committee's decision and action came only after the regulation took effect. The defendants contend that the regulation should not apply because it took effect after Williams's termination and applying it to Williams would improperly apply it retroactively.

### C. Retroactivity and 26 C.F.R. § 1.411(d)–4

We agree with the Seventh and Tenth Circuits that a "pension plan is a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years." *Hurd v. Illinois Bell Tel. Co.*, 234 F.2d 942, 946 (7th Cir.), *cert. denied,* 352 U.S. 918, 77 S.Ct. 216, 1 L.Ed.2d 124 (1956), *quoted in Pratt v. Petroleum Prod. Management Employee Sav. Plan,* 920 F.2d 651, 661 (10th Cir.1990); *see Matthews v. Swift & Co.,* 465 F.2d 814, 817 (5th Cir.1972).[4] Thus, when a vested employee is terminated, a pension plan is ordinarily "required to determine benefits in accordance with the plan then in effect." *Pratt,* 920 F.2d at 661; *see Morales v. Plaxall, Inc.,* 541 F.Supp. 1387, 1391 (E.D.N.Y. 1982); *Denzer v. Purofied Down Prods. Corp. Profit–Sharing & Retirement Plan,* 474 F.Supp. 773, 776–77 (S.D.N.Y.1979); *but see Dyce v. Salaried Employees' Pension Plan of Allied Corp.,* 15 F.3d 163, 166 (11th Cir.1994) (permitting retroactive plan amendment that did not reduce or deprive beneficiaries of benefits to which they would otherwise be entitled).

In a similar fashion, we have been reluctant to apply statutes or regulations retroactively when such application would interfere with "mature or vested rights." *Wright v. Director, Fed. Emergency Management Agency,* 913 F.2d 1566, 1573 (11th Cir.1990). As we noted in *Wright,* the Supreme Court explained in *Bennett v. New Jersey* that it

'has refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that had matured or become unconditional.' This limitation comports with another venerable rule of statutory interpretation, *i.e.,* that statutes affecting substantive rights and liabilities are presumed to have only prospective effect.

470 U.S. 632, 639, 105 S.Ct. 1555, 1560 (1985) (citation omitted); *Wright,* 913 F.2d at 1573. Thus we found in *Wright* that "where a regulatory change interferes with matured or vested rights ... a 'retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.'" *Id.* (quoting *Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621–22, 11 L.Ed.2d 576 (1964)) (some internal quotation marks omitted).

Applying 26 C.F.R. § 1.411(d)–4 retroactively to Williams's retirement benefits as fixed at the time of his termination in 1987 would seriously interfere with the right of the Committee to exercise discretion in considering Williams's request—a right the Committee clearly had at the time his employment terminated. We can find no intention on the part of the Treasury Department for such an effect. The regulation's provision for a transition period prior to full implementation of the regulation's provisions further underscores our conclusion that the Treasury Department did not intend for section 1.411(d)–4 to apply retroactively. *See also De Nobel v. Vitro Corp.,* 885 F.2d 1180, 1194 n. 7 (4th Cir.1989) (noting in dictum that 26 C.F.R. § 1.411(d)–4 not retroactive).

Because 26 C.F.R. § 1.411(d)–4 does not have retroactive effect, it cannot apply to Williams's benefits as fixed at the time of his termination in 1987. This is so without regard to the time of the Committee's final decision on the matter. Thus, the Committee's exercise of discretion in denying

---

4. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Williams's claim for a lump sum benefit distribution was not prohibited.

## IV. Conclusion

For the reasons stated above, the order of the district court dismissing Count I of Williams's amended complaint is affirmed.

AFFIRMED.