47 F.3d 1175
 Pens. Plan Guide P 23907D
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 Barbara K. SACKETT, Plaintiff-Appellant,
v.
The RETIREMENT PLAN FOR EXEMPT OR NON-EXEMPT EMPLOYEES OF
TRACOR, INC. AND ITS AFFILIATES, Defendant-Appellee.
 No. 93-56148.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 9, 1995.
Decided Feb. 24, 1995.
 Before: TROTT, FERNANDEZ, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Barbara K. Sackett appeals the district court's grant of summary judgment in favor of Tracor, Inc., et al. ("Tracor") and denial of Sackett's motion for summary judgment in Sackett's action alleging Tracor wrongfully denied her request that her pension benefits be distributed in a lump sum rather than an annuity. We affirm.
 
 
 3
 * 29 U.S.C. Sec. 1054(g)
 
 
 4
 Sackett contends the Plan Committee's change to a policy of denying requests for lump sum benefits to all participants who were not 55 years old by the date of acquisition of Flight Systems by Tracor was an illegal plan amendment in violation of 29 U.S.C. Sec. 1054(g). This contention fails on two separate and independent grounds.
 
 Section 1054(g) provides in relevant part:
 
 5
 (g) Decrease of accrued benefits through amendment of plan
 
 
 6
 (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) of this title.
 
 
 7
 (2) For purposes of paragraph (1), a plan amendment which has the effect of--
 
 
 8
 ....
 
 
 9
 (B) eliminating an optional form of benefit,
 
 
 10
 with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.
 
 
 11
 29 U.S.C. Sec. 1054(g). This version of Sec. 1054(g), however, was the result of an amendment made in 1984. The effective date of this amendment was July 30, 1984. Retirement Equity Act of 1984, Pub.L. No. 98-397, Title III, Sec. 302(d)(1) 98 Stat. 1451 (1984). Prior to the 1984 amendment, Sec. 1054(g) stated in whole:
 
 
 12
 (g) Decrease of accrued benefits through amendment of plan
 
 
 13
 The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1802(c)(8) of this title.
 
 
 14
 29 U.S.C. Sec. 1054(g) (1982).
 
 
 15
 First, assuming arguendo the policy change made by the Plan Committee did constitute a plan amendment, the 1984 amendment does not apply. The announcement that employees who were not 55 years old by the date of acquisition would not have the option of receiving a lump sum distribution of benefits was made on June 8, 1981. Furthermore, the district court properly found the lifetime annuity offered to Sackett was the actuarial equivalent of the lump sum distribution she was seeking. Therefore, the change in policy was not in violation of Sec. 1054(g) as it existed in 1981 because it did not decrease the accrued benefits to which she was entitled.
 
 
 16
 Second, even if the 1984 amendment to Sec. 1054(g) was controlling, this Court has held that denial of a request for a lump sum distribution of benefits does not constitute an amendment to the plan where, under the terms of plan, the decision whether or not to allow a lump sum distribution is entirely within the discretion of the plan committee. Oster v. Barco of Cal. Employees' Retirement Plan, 869 F.2d 1215, 1220-21 (9th Cir.1988).
 
 
 17
 In Oster, employees were entitled to receive their benefits in the form of an annuity. Id. at 1216. Similarly to the instant case, the plan also provided that an employee could request a lump sum distribution of the actuarial equivalent of his accumulated benefit but that the final determination as to the manner of distribution was entirely within the discretion of the plan committee. Id. at 1216-17.
 
 
 18
 On January 23, 1985, Oster requested a lump sum distribution of his accumulated benefits. Id. at 1217. Oster terminated his employment on February 1, 1985. Id. at 1216. In spite of the fact that the committee had approved almost every request for lump sum distribution of benefits made during the 22-year history of the plan, on January 29, 1985, the committee decided on a general policy of denying lump sum distributions exceeding $3,500 to all employees terminating their employment after January 2, 1985. Id. at 1217.
 
 
 19
 Oster argued the change in policy constituted an illegal plan amendment in violation of 29 U.S.C. Sec. 1054(g) (as amended in 1984). This Court refused to construe the change in policy as an amendment to the plan, stating:
 
 
 20
 The Committee made no actual change in the provisions of the Plan; it merely adopted a policy which applied to a provision which was already part of the Plan. In denying Oster's application for a lump-sum distribution, the Committee followed this policy and thereby exercised the discretion granted to them by the Plan.... Therefore, we hold that the modification of the lump-sum distribution policy did not rise to the level of a plan amendment in violation of section [1054(g) ].
 
 
 21
 Oster, 869 F.2d at 1221. Quoting a Seventh Circuit opinion, this Court stated " 'we are unwilling to contort the plain meaning of "amendment" so that it includes the valid exercise of a provision which was already firmly ensconced in the pension document.' " Id. (quoting Dooley v. American Airlines, 797 F.2d 1447, 1452 (7th Cir.1986), cert. denied, 479 U.S. 1032 (1987)).
 
 
 22
 Likewise, in the instant case, the policy change as reflected in the June 8, 1981 memo and the denial of Sackett's request were valid exercises of the Committee's discretion as provided by the Plan. The Committee's action did not constitute a plan amendment in violation of 29 U.S.C. Sec. 1054(g) (as amended in 1984).
 
 II
 26 U.S.C. Sec. 411(d)(6)
 
 23
 Barbara Sackett contends the memo circulated by the Plan Committee on June 8, 1981, constituted an illegal exercise of discretion in violation of Sec. 411(d)(6) of the Internal Revenue Code, 26 U.S.C. Sec. 411(d)(6), and Sec. 204(g) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1054(g). The memo stated the Committee's past practice of honoring all requests for lump sum payments would be discontinued for all retiring employees who were not 55 years of age prior to the merger with Tracor. Sackett's contention is meritless.
 
 
 24
 The effective date of Sec. 411(d)(6) was January 1, 1989. Sackett retired from Tracor and requested a lump sum distribution in November, 1987. Sackett argues that because she has continued to refuse payment in the form of an annuity and continued to request payment in the form of a lump sum past January 1, 1989, Sec. 411(d)(6) should be applicable. This position is unsupported by either statutory text or case law.
 
 
 25
 Treasury Regulation Sec. 1.411(d)-4, Q & A 9(c)(2) states:
 
 
 26
 (2) Existing noncollectively bargained plans. With respect to existing plans other than collectively bargained plans this section is effective for the first day of the first plan year commencing on or after January 1, 1989.
 
 
 27
 26 C.F.R. Sec. 1.411(d)-4, Q & A-9(c)(2). Under the regulations, a plan is an existing plan if it was both adopted and in effect prior to August 1, 1986. Id. at Q & A-9(c)(1). This rule is reinforced by Sec. 1.411(d)-4, Q & A-9(d)(1) which states in relevant part:
 
 
 28
 (d) Delayed effective date not applicable to new alternatives or conditions--(1) In general. The delayed effective date[ ] in paragraph [ ] (c)(2) ... of this Q & A-9 for existing plans are only applicable with respect to a section 411(d)(6) protected benefit if both the section 411(d)(6) protected benefit and the condition providing employer discretion as to the availability of such benefit are both adopted and in effect prior to August 1, 1986.
 
 
 29
 26 C.F.R. Sec. 1.411(d)-4 Q & A-9(d)(1).
 
 
 30
 In this case the plan was both adopted and in effect prior to August 1, 1986. In addition, the memo from the Plan Committee altering the policy of granting lump sum distribution of benefits was circulated on June 8, 1981, long before the cut-off date of August 1, 1986.
 
 
 31
 Case law supports this interpretation. In Williams v. Cordis Corp., 30 F.3d 1429 (11th Cir.1994), the Eleventh Circuit dealt with this issue in a case involving almost identical facts. In Williams, Cordis terminated Joseph Williams's employment in 1987. Id. at 1432. Cordis maintained a retirement plan, similar to the one in the instant case, whereby the plan committee had discretion to make lump sum distributions to beneficiaries. Williams's request for a lump sum distribution of benefits was denied twice by the committee in February, 1989, and on July 5, 1989. Williams filed suit claiming the committee's decision violated 26 C.F.R. 1.411(d)-4. Williams, 30 F.3d at 1430.
 
 
 32
 After applying relevant legal principles, the Williams court held:
 
 
 33
 Applying 26 C.F.R. Sec. 1.411(d)-4 retroactively to Williams's retirement benefits as fixed at the time of his termination in 1987 would seriously interfere with the right of the Committee to exercise discretion in considering Williams's request--a right the Committee clearly had at the time his employment terminated. We can find no intention on the part of the Treasury Department for such an effect. The regulation's provision for a transition period prior to full implementation of the regulation's provisions further underscores our conclusion that the Treasury Department did not intend for section 1.411(d)-4 to apply retroactively. See also De Nobel v. Vitro Corp., 885 F.2d 1180, 1194 n. 7 (4th Cir.1989) (noting in dictum that 26 C.F.R. Sec. 1.411(d)-4 not retroactive).
 
 
 34
 Because 26 C.F.R. Sec. 1.411(d)-4 does not have retroactive effect, it cannot apply to Williams's benefits as fixed at the time of his termination in 1987. This is so without regard to the time of the Committee's final decision on the matter. Thus the Committee's exercise of discretion in denying Williams's claim for a lump sum benefit distribution was not prohibited.
 
 
 35
 Id. at 1432-33.
 
 
 36
 Similarly, in the instant case Sackett terminated her employment in November of 1987. At that time, the Plan provided:
 
 
 37
 If a Participant's interest shall become distributable by reason of Normal Retirement, ... he shall be entitled to receive the appropriate benefit ... payable in the form of a lifetime annuity....
 
 
 38
 ....
 
 
 39
 At the discretion of the Committee, but only with the approval of the former Participant, such benefits may instead be paid in a lump sum....
 
 
 40
 (Emphasis added). The Committee had complete discretion whether to grant or deny requests for lump sum benefit distribution. Therefore, pursuant to the text of Sec. 1.411(d)-4 and the Eleventh Circuit's holding in Williams, the Committee's decision was not governed by Sec. 1.411(d)-4 and was an appropriate exercise of discretion.
 
 III
 Plan Anti-Discrimination Provisions
 
 41
 Sackett contends the Committee's policy of denying lump sum benefits to employees who were not yet 55 years old at the date of acquisition was discriminatory because it favored a disproportionately high number of officers, shareholders, and highly-compensated employees. Sackett's claim is unsupported by the evidence.
 
 
 42
 The only evidence offered by Sackett to prove discrimination was that the three Plan Committee members were each over 55 years old at the date acquisition, were principal shareholders, and elected to receive a lump sum distribution upon retirement. Sackett offered no evidence indicating how many of the over 300 Flight Systems employees were 55 years old on the date of acquisition or what percentage of that group were officers, shareholders, or highly-compensated employees.
 
 
 43
 In contrast, Tracor provided convincing evidence of objective, neutral, and nondiscriminatory reasons for the change in Flight Systems' Pension Plan policy. According to Tracor, the change occurred as a result of the realization that although both the Flight Systems and Tracor Plans provided for discretionary lump sum distributions, Tracor had a policy of denying such requests while Flight Systems historically approved such requests. Tracor determined that "[o]ver forty employees of value to the company, at all levels of its operations from management on down, would be at or above early retirement age by the time of acquisition." This created the risk that an indeterminate number of these important employees might choose to take early retirement prior to the acquisition in order to take advantage of the lump sum distribution opportunity. In order to reduce this risk Tracor agreed to a post-acquisition exception to its no lump sum policy for Flight Systems employees who had reached 55 years of age on the date of acquisition. The 55 years of age minimum was adopted because that was the minimum age at which an employee could choose to take early retirement. The age requirement applied to all Flight Systems employees.
 
 
 44
 Sackett failed to present any evidence indicating the reasons offered by Tracor were pretextual. Furthermore, Sackett's contention on appeal that the district court failed to address the issue of a conflict of interest between the Plan Committee and the Plan participants in finding no discrimination is incorrect.
 
 
 45
 At the hearing on Tracor's Motion for Summary Judgment, the district court stated:
 
 
 46
 It appears to me that there is no triable issue concerning whether this amounts to a discrimination by a small group of the higher officers in their own favor. The--first of all, this isn't an amendment to discriminate in favor of those officers. I don't think it's an amendment at all. And additionally, the records that have been--that are undisputed factual records at this point, and now that discovery has been done, those records show that there are a lot of other officers involved in this situation, not simply this small group, and that--I just don't think the facts bear out that that's what's going on.
 
 
 47
 The evidence is--has been--the evidence has been presented that this method of payout was adopted for nondiscriminatory reasons, and that it is being neutrally applied. And I think then, as a result of that showing, the Plaintiff has to show us that this amounts to a--some sort of a discriminatory pretext that's being done, and here I think the Plaintiff has failed to show that this method of payout was adopted for discriminatory reasons, and the Plaintiff has failed to articulate evidence that would show that this is a pretext.
 
 
 48
 The district court clearly did consider the issue of discrimination and found Tracor had met its burden and Sackett had not. These findings are supported by the evidence.
 
 IV
 Fiduciary Duty
 
 49
 Sackett also contends the change in the Plan's policy which resulted in the denial of her request for a lump sum distribution of benefits constituted a breach of the Committee's fiduciary duty to the Plan participants. This court's decision in Oster controls.
 
 
 50
 Although we review the district court's grant of summary judgment de novo, a decision of an ERISA plan's trustee should not be disturbed unless it is arbitrary or capricious. Oster, 869 F.2d at 1217. Where an employer administers its own plan, less deference should be given to the trustee's decision where it implicates a serious conflict between the trustee and the beneficiaries. Id.
 
 
 51
 The conflict in this case, however, is not between the Committee and the participants of the Plan, but rather, between two different groups of beneficiaries. Sackett argues a serious conflict existed because the members of the Committee were all eligible to receive lump sum distributions under the new policy.
 
 
 52
 Under Oster, that members of the Committee benefitted from the decision, without more, "is insufficient to create a genuine issue of material fact as to the Committee's loyalty to the Plan's beneficiaries." Id. at 1218. Furthermore, as in Oster, this decision is reinforced by the fact that Sackett is not suffering a reduction in benefits, but rather, a delay in the receipt of the benefits. Id.
 
 
 53
 Under the arbitrary and capricious standard of review, "[w]e will not substitute our judgment for the judgment of the Committee unless the actions of the [Committee] are not grounded on any reasonable basis." Id. (internal quotations omitted). Unlike Oster, the action of the Committee in the instant case does not even appear to be arbitrary or capricious on its face. In Oster, the Committee changed its policy of granting lump sum benefit distributions, which it had followed without exception for 22 years, after Oster submitted his request and only days before he retired. Id. at 1217.
 
 
 54
 In the instant case, the Committee announced the change in its policy, that it would no longer grant request for lump sum benefit distribution, over six years prior to Sackett's retirement and request for lump sum distribution. Nevertheless, even assuming the Committee's action appears arbitrary or capricious on its face, Sackett's claim must fail because the Committee's decision was, in fact, based on a reasonable rationale.
 
 
 55
 Under ERISA, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. Sec. 1104(a)(1). "At the same time, however, they have a duty to keep the fund financially stable. The purpose of a fund is to provide benefits to as many intended beneficiaries as is economically possible while protecting the financial stability of the fund." Oster, 869 F.2d at 1218 (internal quotation omitted).
 
 
 56
 First, Sackett argues Flight Systems Plan's historical policy of granting requests for lump sum benefit distributions made the denial of Sackett's request an abuse of discretion. Under this Court's holding in Oster, "[a] mere finding that prior requests had been granted, however, [can] not by itself sustain a ruling that the Committee acted in an arbitrary and capricious manner." Id. at 1219. Even though, under Flight Systems, the Plan Committee had historically granted all requests for lump sun benefit distribution, the fact remains that under the express terms contained within the plan document, the Plan Committee maintained complete discretion to evaluate all such requests. See Id. The change in policy is insufficient to establish that the Committee acted in an arbitrary or capricious manner.
 
 
 57
 Sackett's only remaining alternative was to show the justification for the Committee's action was unreasonable. This she did not do.
 
 
 58
 Tracor offered the affidavit of James Smith, chairman of the retirement committee responsible for the administration of the Tracor retirement plans, in support of its motion for summary judgment. Smith stated Tracor's policy of refusing requests for lump sum benefit distribution was based on the following:
 
 
 59
 (1) The Tracor Plan's overriding purpose was to provide retirement benefits as opposed to benefits in the nature of severance pay, thus assuring plan participants of an available income source during their retirement years. Lump-sum distributions and their potential for early consumption by those receiving them jeopardized accomplishment of that purpose.
 
 
 60
 (2) Adherence to an annuity form of distribution was by far the best choice for plan fiscal integrity and administration because it resulted in a secure and accumulating base of assets, for the protection of all present and future participants. The ready availability of lump-sum distributions (in often sizeable amounts) could reduce and potentially threaten the security of that asset base.
 
 
 61
 These reasons are similar to the justifications this Court accepted as reasonable in Oster, 869 F.2d at 1220. That Tracor was willing to make an exception to this policy in order to preserve the integrity of Flight Systems work force prior to the acquisition does not make an otherwise reasonable policy, unreasonable.
 
 
 62
 Sackett has failed to produce sufficient evidence to show the Plan Committee acted in an arbitrary or capricious manner in denying her request for a lump sum distribution of her accrued benefits.
 
 V
 Discovery
 
 63
 Finally, Sackett contends the district court erred in refusing to construe her objections that she had been denied relevant discovery, as a motion for additional discovery pursuant to Fed.R.Civ.P. 56(f). Sackett argues she requires further discovery of facts relating an early retirement window option offered by Tracor in 1991, and the minutes of Board of Directors meeting of both Tracor and Flight Systems during the time period surrounding the acquisition.
 
 
 64
 First, Sackett has failed to show how an early retirement window option offered in 1991 is relevant to her claim of a wrongful denial of benefits which occurred in 1987. Sackett seems to argue it is relevant because it may nullify the previous denial of lump sum benefit distribution, pursuant to 26 U.S.C. Sec. 411(d)(6). Because, as discussed above, Sec. 411(d)(6) is inapplicable to the Committee's action in the instant case, further discovery relating to the 1991 early retirement window option is irrelevant to Tracor's motion for summary judgment.
 
 
 65
 Second, Sackett failed to show how allowing discovery of the Board meetings minutes would be helpful in precluding summary judgment. Qualls ex rel. Qualls v. Blue Cross of California, 22 F.3d 839, 844 (9th Cir.1994). Sackett's requests for additional discovery following the close of the discovery period were repeatedly denied by a magistrate and by the district court. She failed to show that the district court, in denying her request for additional discovery and in failing to consider her objections as a motion under Rule 56(f), abused its discretion.
 
 VI
 Conclusion
 
 66
 For the foregoing reasons, the district court's grant of Tracor's motion for summary judgment and denial of Sackett's motion for summary judgment is affirmed. Sackett's request for costs and attorneys' fees on appeal is denied.
 
 
 67
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3