Jerry L. LYONS, individually and on behalf of all others similarly situated, Plaintiff,

v.

GEORGIA–PACIFIC CORPORATION SALARIED EMPLOYEES RETIREMENT PLAN and Georgia–Pacific Corporation, Defendants.

No. Civ.A.1:97CV0980–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 22, 1999.

---

Rex M. Lamb, III, Bruce David Cohen, Smith, Gambrel & Russell, Atlanta, GA, Robert P. Geller, Bradford T. Yaker, Eva T. Cantarella, Hertz, Schram & Saretsky, Bloomfield Hills, MI, Allen C. Engerman, Boca Raton, FL, for plaintiff.

Peter Quirk Bassett, Forrest W. Hunter, Gregory C. Braden, Todd Richard David, Alston & Bird, Atlanta, GA, for defendants.

### ORDER

FORRESTER, District Judge.

This matter is before the court on Defendants' motion for summary judgment [22–1] and Plaintiff's cross motion for summary judgment [23–1].

## I. STATEMENT OF THE CASE

Plaintiff Jerry L. Lyons filed the instant action on behalf of himself and a class of persons similarly situated against Defendants Georgia–Pacific Corporation and Georgia–Pacific Corporation Salaried Employees Retirement Plan ("SERP" or the "Plan") pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, alleging that he was denied his proper benefits under the Plan. He claims that under § 502(a)(3) of ERISA he is entitled to bring an action to enjoin Defendants' violation of the statute and to obtain equitable relief. The dispute in this case arises over the statutory interpretation of ERISA in conjunction with various provisions of the Internal Revenue Code ("IRC" or "Code") and Treasury Regulations promulgated thereunder. Both Plaintiff and Defendants have filed motions for summary judgment. The parties participated in oral argument before the undersigned on March 11, 1999.

The following facts are undisputed.[1] Plaintiff is a former employee of Defendant Georgia–Pacific Corporation and was a participant in the Defendant SERP. The Plan was a cash balance defined benefit plan, which is a pension plan that defines retirement benefits for employees by reference to a hypothetical account to which hypothetical contributions are periodically made pursuant to various formulas set forth in the Plan. The Plan provided participants with individual account statements of their hypothetical account balances and allowed participants to elect to receive a lump sum distribution of benefits under the Plan in the amount of the balance of their hypothetical accounts.

Plaintiff's employment with Georgia–Pacific terminated on January 5, 1991. At that time, he was 49 years old and had completed over five years of service and was therefore eligible for a "vested" benefit under the Plan. In 1993, Plaintiff elected to receive a total lump sum distribution of his SERP benefits. In accordance with the provisions of the Plan, he received the amount stated as the balance of his individual account: $36,109.35. Although the lump sum distribution made to Plaintiff complied with the terms of the SERP, Plaintiff contends that it was in violation of ERISA.

Since the commencement of the instant action, the parties have agreed to certification of a class of those employees similarly situated to Plaintiff. Pursuant to a stipulation agreed to by the parties, the court entered an Order certifying a class pursuant to Fed.R.Civ.P. 23(a) of:

All participants (or beneficiaries of participants) in the [Plan] (i) who received a lump sum distribution of benefits calculated at a time when such participants had a vested interest in the Plan and who (ii) received a distribution of bene-

---

1. The undisputed facts are taken from both parties' motions for summary judgment and construed pursuant to Local Rule 56.1B(2).

fits in a lump sum where (iii) at the date as of which the amount of the lump sum was calculated, the lump sum was lower than the present value, if determined using the "applicable interest rate" as defined in Internal Revenue Code Section 417(e)(3) and set forth in Treasury Regulations issued pursuant to Internal Revenue Code Section 417(e), of such participants' accrued benefit, as defined under ERISA.

(Order, September 19, 1997).

### The Plan

Taken from the documents submitted by both parties, the court finds the following terms of the SERP relevant. The Plan provided a "Personal Account" to be established for each Participant under the Plan, and for basic monthly credits to be made to the Personal Account for service, depending upon the Participant's compensation. (Plan §§ 3.1, 3.2). Specifically, "[t]he amount of monthly credits to the Personal Account of an eligible Participant [was] equal to four percent (4%) of the Participant's Compensation for that calendar month as determined by the Plan Administrator." (Plan § 3.2). Monthly credits were to be issued to the accounts only up until the Participant's "Severance Date." The Plan went on to provide "Additional Credits" to be issued depending upon the Participant's age at the time of the Plan's effective date (§ 3.3), as well as "Periodic Adjustments" (§ 3.5). Each Participant's Personal Account was to be automatically increased at the end of each month by Periodic Adjustment Percentage ("PAP"). The PAP was calculated as follows:

(1) Determine the PBGC [Pension Benefit Guaranty Corporation] 12 month average immediate annuity interest rate for the calendar year preceding the year in which the adjustment is to be made;

(2) Add to (1).75%;

(3) Divide the sum of (1) and (2) by 12; and

(4) Round the result to 6 decimal places.

(Plan § 3.5). Each account was to be increased by an amount equal to the product of the PAP and the Personal Account balance at the beginning of the month up until the Benefit Commencement Date.

The Plan provided five forms of retirement benefits: Normal retirement, early retirement, postponed retirement, disability retirement, and vested benefit. (Plan §§ 4.1–4.5). Normal Retirement was available for a Participant who terminated employment on the Normal Retirement Date. (Plan § 4.1). Normal Retirement Date was defined in the Plan as a Participant's 65th birthday. (Plan § 1.29). A "Vested Benefit" was defined as available for those Participants not eligible for the remaining four retirement benefits who terminated employment after at least five years of service. (Plan § 4.5). The Plan defined the vested benefit for a participant as "equal to his then Accrued Benefit payable in accordance with the provisions of Article 6" of the Plan. (Id.). It appears that the normal form of benefit is an increasing annuity.

Further, the Plan provided optional forms of benefits, allowing a Participant to receive, in lieu of the standard benefit, several alternate forms of payment. One of these options was "a single lump sum payment equal to the amount credited to the Participant's Personal Account as of the end of the month preceding his Benefit Commencement Date." (Plan § 6.4).

The Benefit Commencement Date under the Plan was defined as:

in the case of an annuity form of distribution, the first day of the first period for which an amount is payable as an annuity under this Plan and, in the case of a lump sum payment, the first date on which all events have occurred which entitle the Participant to payment under this Plan.

(Plan § 1.5).

### Applicable Statutes and Treasury Regulations

At the time the distribution at issue in this case was made to Plaintiff, section 203(e) of ERISA provided:

**(e) Consent for distribution; present value; covered distributions**

(1) If the present value of any nonforfeitable benefit with respect to a participant in a plan exceeds $3,500, the plan shall provide that such benefit may not be immediately distributed without the consent of the participant.

(2)(A) For purposes of paragraph (1), the present value shall be calculated—

(i) by using an interest rate no greater than the applicable interest rate if the vested accrued benefit (using such rate) is not in excess of $25,000, and

(ii) by using an interest rate no greater than 120 percent of the applicable interest rate if the vested accrued benefit exceeds $25,000 (as determined under clause (i)).

In no event shall the present value determined under subclause (II)[sic] be less than $25,000.

(B) For purposes of subparagraph (A), the term "applicable interest rate" means the interest rate which would be used (as of the date of the distribution) by the Pension Benefit Guaranty Corporation for purposes of determining the present value of a lump sum distribution on plan termination.

ERISA § 203(e), 29 U.S.C. § 1053(e).[2][3]

Section 3002 of ERISA provides for "procedures with respect to continued compliance with Internal Revenue requirements relating to participation, vesting, and funding standards." Specifically, § 3002(c) states:

Regulations prescribed by the Secretary of the Treasury under sections 410(a), 411 and 412 of Title 26 (related to minimum participation standards, minimum vesting standards, and minimum funding standards, respectively) shall also apply to the minimum participation, vesting and funding standards set forth in parts 2 and 3 of subtitle B of subchapter I of this chapter.

ERISA § 3002(c), 29 U.S.C. § 1202(c).

The means for calculating the amount of the lump sum payment urged by the Plaintiff does not expressly appear in ERISA § 203(e). It does appear in Treasury Regulation § 1.411(a)–11, promulgated under IRC § 411, which provides for "restriction and valuation of distributions" and states:

Section 411(a)(11) restricts the ability of a plan to distribute any portion of a participant's accrued benefit without the participant's consent. **Section 411(a)(11) also restricts the ability of defined benefit plans to distribute any portion of a participant's accrued benefit in optional forms of benefit without complying with specified valuation rules for determining the amount of the distribution.** If the consent requirements or the valuation rules of this section are not satisfied, the plan fails to satisfy the requirements of section 411(a).

(Emphasis supplied). Treas.Reg. § 1.411(a)–11(a)(1); 26 C.F.R. § 1.411(a)–11(a)(1). Section 1.411(a)–11(d) then went on to discuss these "distribution valuation requirements" and stated, "[i]n determining the present value of any distribution of any accrued benefit from a defined benefit plan, the plan must take into account specified valuation rules. For this purpose, the valuation rules are the same valuation rules for valuing distributions as set forth

---

**2.** ERISA § 203(e)(2) 29 U.S.C. § 1053(e)(2) was amended in 1994 to provide an alternate formula for calculation of present value in accordance with 29 U.S.C. § 1055(g)(3), which determines present value by reference to the applicable mortality table and applicable interest rate. All references in this Order to ERISA § 203(e) refer to the pre–1994 version.

**3.** At the time Plaintiff received his distribution in the instant case, IRC § 417(e)(3) contained language identical to that of § 203(e)(2) of ERISA in defining the determination of present value.

in section 417(e); *see* § 1.417(e)–1(d)." § 1.411(a)–11(d).

At the time relevant to the instant case, Treasury Regulation 1.417(e)–1(d), promulgated under IRC § 417(e), provided:

> **Present value requirement—(1) Requirements.** For purposes of determining the present value of any accrued benefit and for purposes of determining the amount (subject to sections 411(c)(3) and 415) of any distribution including a single sum, a defined benefit plan is subject to the interest rate limitations described in subparagraph (2) of this paragraph (d) at the time set forth in paragraph (3) of this paragraph (d). A plan amendment that changes the rate described in this paragraph (d) is subject to section 411(d)(6). **The present value of any optional form of ·benefit cannot be less than the present value of the normal retirement benefit determined in accordance with this paragraph.**
> \*\*\*

(Emphasis supplied).[4] Treas.Reg. § 1.417(e)–1(d); 26 C.F.R. § 1.417(e)–1(d).[5]

### The Parties' Contentions

Reading the above-referenced statutes and regulations together, Plaintiff contends that Defendants were required, when determining the amount of his benefits, to give effect to Treas.Reg. §§ 1.417(e)–1(d) and 1.411(a)–11, as incorporated into ERISA through § 3002(c). Plaintiff therefore concludes that Defendants should have calculated the present value of his normal retirement benefit under the formula provided in ERISA § 203(e)(2) and paid him no less than that amount. Plaintiff claims that he was entitled to $49,341.83 instead of the $36,109.15 he received under the Plan.

Defendants contend that Plaintiff cannot rely on ERISA § 203(e) in this case, because by its terms it only applies to involuntary distributions and the distribution in this case was voluntarily received by Plaintiff. Defendants base their position on the language of § 203(e), which sets forth the formula for calculating present value and specifically limits the use of the formula to the "purposes of paragraph (1)." ERISA § 203(e)(2). Defendants assert that because paragraph (1) of § 203(e) is directed toward a determination of whether consent is required for immediate distribution, the provision and its formula for present value are inapplicable in the instant case.

Plaintiff cites in response to Defendants' argument the Treasury Regulations promulgated under IRC § 411, made applicable to ERISA through § 3002(c), which explain that "[i]n determining the present value of any distribution of any accrued benefit from a defined benefit plan, the plan must take into account specified valuation rules," and also that the provision "applies whether or not the participant's consent is required. . . ." Treas.Reg. § 1.411(a)–11(d). The valuation rules referenced in Treas.Reg. § 1.411(a)–11(d) are those set forth in Treas.Reg. § 1.417(e)–1(d), which state, "[t]he present value of any optional form of benefit cannot be less that the present value of the normal retirement benefit. . . ." Treas.Reg. § 1.417(e)–1(d). Through these regulations, Plaintiff finds authority for his cause of action under ERISA § 203(e).

**4.** On January 18, 1996, the IRS released Notice 96–8, 1996–1 C.B. 359, for the purpose of providing "guidance concerning the requirements of section 411(a) and 417(e) with respect to the determination of the amount of a single sum distribution from a cash balance plan." 1996–1 C.B. at 1. After a brief description of cash balance plans as a type of defined benefit pension plan, the Service stated, "in order to comply with 411(a) and 417(e) in calculating the amount of a single sum distribution under a cash balance plan, the balance of the employee's hypothetical account must be projected to normal retirement age and then the employee must be paid at least the present value, determined in accordance with section 417(e), of that projected hypothetical account balance." *Id.* at 2.

**5.** Treas.Reg. § 1.417(e)–1 has currently been amended. All references in this Order to the regulation refer to the pre–1994 version.

## II. DISCUSSION

Resolution of the dispute between the parties as to the applicability of § 203(e) of ERISA turns on a determination of whether the Treasury Regulations promulgated under the Internal Revenue Code can be relied upon to create a substantive right under ERISA in the instant case. In general, courts do not incorporate Treasury Regulations into ERISA to create substantive rights. *See, e.g., Tulley v. Ethyl Corp.,* 861 F.2d 120, 125 (5th Cir.1988); *Dooley v. American Airlines, Inc.,* 797 F.2d 1447, 1452–53 (7th Cir.1986) (refusing to incorporate regulations promulgated under IRC § 401 into ERISA and citing as authority ERISA § 3002(c), 29 U.S.C. § 1202(c)); *Reklau v. Merchants Nat. Corp.,* 808 F.2d 628, 630–31 (7th Cir.1986) (rejecting contention that regulations promulgated under IRC § 401 can be made applicable to ERISA under ERISA § 3002(c), 29 U.S.C. § 1202(c), and also finding that IRC § 401 cannot create substantive rights under ERISA); *Cowan v. Keystone Emp. Profit Sharing Fund,* 586 F.2d 888, 890, n. 3 (1st Cir.1978) (finding no substantive right created under IRC § 401).

However, certain regulations promulgated under IRC §§ 410(a), 411 and 412 have been specifically incorporated into ERISA under § 3002(c). Courts have recognized that Treasury Regulations promulgated under these code sections are equally applicable to certain provisions of ERISA. *See, e.g., Williams v. Cordis Corp.,* 30 F.3d 1429, 1431, n. 2 (11th Cir.1994); *Counts v. Kissack Water and Oil Serv., Inc.,* 986 F.2d 1322, 1324, n. 1 (10th Cir.1993); *Abraham v. Exxon Corp.,* 85 F.3d 1126, 1131 (5th Cir.1996). Further, regulations promulgated under ERISA explain the close relationship between specific provisions of ERISA and the Internal Revenue Code. 29 C.F.R. § 2530.200a–1 (stating that the requirements of Part 2 of Title I of ERISA, which contains minimum standards that an employee pension benefit plan must satisfy, are "substantially identical" to the requirements of Subchapter D of Chapter 1 of Subtitle A of the Internal Revenue Code, which sets forth standards for plans seeking qualification for certain tax benefits). Specifically, the regulations under ERISA state:

> Regulations prescribed by the Secretary of the Treasury or his delegate under sections 410 and 411 of the Code (relating to minimum standards for participation and vesting) shall apply for purposes of sections 202 through 204 of [ERISA]. Thus, except for those provisions ... for which authority to prescribe regulations is specifically delegated to the Secretary of Labor, regulations prescribed by the Secretary of the Treasury shall also be used to implement the related provisions contained in [ERISA].

29 C.F.R. § 2530.200a–2.

Under this authority, the court will construe Treasury Regulation § 1.411 as incorporated into ERISA § 203, as IRC § 411 is the statutory analog to ERISA § 203. However, the substantive right asserted by Plaintiff in the instant case does not appear on the face of the ERISA statute. The appropriate inquiry thus becomes whether the authority to create the substantive right under ERISA at issue in this case was properly delegated by Congress to the Secretary of Treasury and consequently whether the regulation can be given force and effect.

Both IRC § 411 and ERISA § 203 set forth "minimum vesting standards" and specifically require that qualified plans provide that "an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." IRC § 411(a); ERISA § 203(a). Both statutes also go on to require in substantially similar language that if the "present value" of any participant's vested and nonforfeitable benefit exceeds $3,500, the plan must provide that such benefit may not be immediately distributed without the consent of the participant. IRC § 411(a)(11)(A); ERISA § 203(e)(1). The statutes then set forth, *for purposes of* the requirements in IRC § 411(a)(11)(A) and

ERISA § 203(e)(1), identical formulas for the computation of present value.[6] IRC § 411(a)(11)(B); ERISA § 203(e)(2).

The Treasury Regulations promulgated under IRC § 411 specifically address § 411(a)(11). In describing the scope of the statute, the regulations explain that § 411(a)(11) restricts the ability of a plan to distribute an accrued benefit without the consent of the participant, and go on to state that "[s]ection 411(a)(11) also restricts the ability of defined benefit plans to distribute any portion of a participant's accrued benefit in optional forms of benefit without complying with specified valuation rules for determining the amount of the distribution." Treas.Reg. § 1.411(a)–11(a)(1). Section 1.411(a)–11(d) discusses these "distribution valuation requirements," referring to the valuation rules set forth in IRC § 417(e) and Treasury Regulation § 1.417(e)–1(d).

Applying these regulations to ERISA, the court finds that the terms of Treas. Reg. § 1.411(a)–11 would require a plan to comply with the valuation rules set forth in Treas.Reg. § 1.417(e)–1(d) before distributing any portion of a participant's benefit in an optional form. Specifically, the regulations would direct that under ERISA, "[t]he present value of any optional form of benefit cannot be less than the present value of the normal retirement benefit determined in accordance with this paragraph." Treas.Reg. § 1.417(e)–1(d). Accordingly, the application of these regulations would require a plan, in order to comply with ERISA, to make a present value calculation of a participant's normal retirement benefit in accordance with the formula under ERISA § 203(e)(2) and distribute no less than that amount as the present value of an optional benefit.

ERISA § 203(e) on its face applies only in the context of determining whether consent of a participant is required as a prerequisite to making an immediate distribution of benefits. The regulations discussed above necessarily expand the application of § 203(e) to all distributions of benefits, regardless of whether or not consent is required for the distribution. To determine whether application of these regulations to ERISA can be considered supported by a proper delegation under ERISA to the Secretary of Treasury, the court turns to the guidance of the Supreme Court as set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Chevron* requires a two-pronged analysis of an agency's interpretation of a statute: (1) "whether Congress has directly spoken to the precise question at issue," and, if not, (2) "whether the agency's answer is based on a permissible construction of the statute." 467 U.S. at 842–43, 104 S.Ct. 2778. Where Congress clearly leaves a gap to be filled by an administrative agency, there is an "express delegation" of authority, and regulations enacted thereunder are "given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. 2778. Legislative delegation to an agency can also be implicit rather than explicit, and in that case "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Id.* at 844, 104 S.Ct. 2778. The question for the court in this latter situation is whether the agency's interpretation was a "reasonable" one. *Id.* at 845, 104 S.Ct. 2778.

Congress has generally delegated to the Secretary of Treasury the task of adminis-

---

**6.** The present value is calculated:

    (I) by using an interest rate no greater than the applicable interest rate if the vested accrued benefit (using such rate) is not in excess of $25,000, and

    (II) by using an interest rate no greater than 120 percent of the applicable interest rate if the vested accrued benefit exceeds $25,000 (as determined under clause (I)). In no event shall the present value determined under subclause (II) be less than $25,000.

IRC § 411(a)(11)(B); ERISA § 203(e)(2).

tering the nation's tax laws under 26 U.S.C. § 7805, which provides that "the Secretary shall prescribe all needful rules and regulations for the enforcement" of the Code. Although particular deference is shown by courts in the area of tax law, a regulation deemed unreasonable will not be given force and effect. *United States v. Cartwright*, 411 U.S. 546, 550, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973); *R.J.R. Nabisco, Inc. v. United States*, 955 F.2d 1457, 1464 (11th Cir.1992); *Chevron*, 467 U.S. at 845, 104 S.Ct. 2778.

■ As discussed below, the court cannot find that the Secretary of Treasury's interpretation of ERISA § 203(e) through Treasury Regulation § 1.411(a)–11 was a reasonable one that can be given force and effect in the instant case. ERISA § 203 is directed toward the establishment of "minimum vesting standards," and subsection (e) specifically legislates requirements for "consent for distribution; present value; covered distributions." ERISA § 203(e) plainly sets forth requirements for situations in which employers must obtain the consent of participants before making immediate distributions of benefits and provides a formula *for the purpose of* calculating present value in making this determination. ERISA § 203(e). Nowhere on the face of § 203(e) is there any reference to general lump sum distributions under the plan. In addition, the court can find no suggestion in the legislative history or otherwise to suggest that ERISA § 203(e) was intended to serve as a blanket requirement that any distribution under an ERISA plan comply with the formula for present value set forth in § 203(e)(2). Further, even looking beyond ERISA, the court finds no authority in the legislative history of IRC § 411 or otherwise to support the portion of Treas.Reg. § 1.411(a)–11 as applied under the Code. Instead, commentary relating to both ERISA § 203 and IRC § 411 which was considered by the court seems to refer

only to the present value computation in the context of determining whether benefit distributions can be involuntarily made. *See, e.g.*, S.Rep. No. 103–412 (1994); H.R.Rep. No. 103–826(I) (1994); H.R.Rep. No. 103–632(I) (1994).

It is evident that Treasury Regulation § 1.411(a)–11 clearly purports to restrict the ability of defined benefit plans to distribute a portion of a participant's accrued benefit without complying with specified valuation rules as set forth in Treasury Regulation § 1.417(e)–1(d).[7] However, the court can find no congressional authorization for the expansion of ERISA § 203(e) effected by Treas.Reg. § 1.411(a)–11. Plaintiff has not directed the court to any authority under which Treas.Reg. § 1.411(a)–11(a) expanded the scope of ERISA § 203(e) or IRC § 411 or any policy reasons why such an expansion should be given effect.

What is produced in the world by the regulations is this: An employer such as the Defendant, chooses to compound the employee's hypothetical balance monthly at a rate in excess of any rate required by law. At early termination the employee has the options, among others, of receiving either the normal annuity at age 65 or the full amount of his hypothetical account. If, as here, his account is large enough, the election is voluntary and the participant is free to make the decision that he thinks is in his economic best interest. He may decide that an annuity at the normal retirement age under the plan may have greater value, or he may believe that he can best the compounding rate used by his employer and take the lump sum. In no way can it be said that the plan unfairly divests him of his due. It is difficult to see how the regulations implement any objective of ERISA.

It may be contended that he is forfeiting some of his normal benefit. There are two answers to that. The first is that he is

---

7. The court notes that I.R.S. Notice 96–8, 1996–1 C.B. 359, evidences such an intent on the part of the Treasury Department.

free to take either. The second is that it is only made to appear that there is a difference in value by a computational contrivance that has only slight connection to economic reality. The parties say that under the regulations the balance in the hypothetical account is run out to age 65 using the more generous rate selected by the employer, and then is discounted back to present value at the Pension Benefit Guaranty Corporation rate, which was said at argument to be about 4.5%. Even today, when interest rates are ·remarkably low and the yield curve on government bonds is almost flat, this discount rate is about one point lower than would be available to the participant in some of the most conservative of investments. These regulations, then, do not so much preserve benefit value as they create an economic windfall not intended by ERISA.

Accordingly, the court finds the portion of Treas.Reg. § 1.411(a)–11 at issue in this case an unreasonable construction of the congressional mandate set forth in ERISA § 203(e). The interpretation of the Secretary is clearly beyond the scope of the language of the statute, and the court has found no evidence outside the statute to explain the expansion. Instead, the court finds a substantive right, unsupported by the text of ERISA, created by the Secretary of Treasury without authorization from a congressional mandate. Therefore, under *Chevron,* the court cannot find that the interpretation reflected in Treas.Reg. § 1.411(a)–11 meets the minimum threshold of reasonableness needed to give it force and effect.

Because the portion of Treas.Reg. § 1.411–11(a) relied upon by Plaintiff has been deemed by the court to be an unreasonable regulation incorporated under ERISA § 203(e), Plaintiff cannot rely upon the Treasury Regulations as the source of his substantive right in the instant case. Without the application of Treasury Regulations §§ 1.411(a)–11(d) and 417(e)–1(d), Plaintiff has no evident cause of action under ERISA § 203(e). Accordingly, Plaintiff's motion for summary judgment must be denied and Defendants' motion for summary judgment granted.

## III. CONCLUSION

Defendants' motion for˙ summary judgment [22–1] is GRANTED and Plaintiff's cross motion for summary judgment [23–1] is DENIED.

SO ORDERED.